J-S47023-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                :  PENNSYLVANIA
                                                :
                v.                        :
                                                :
BRYCE WILLIAMS                     :
                                                :
            Appellant           :  No. 1782 WDA 2017

Appeal from the Judgment of Sentence Entered October 27, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001917-2017

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:       FILED NOVEMBER 08, 2018

Bryce Williams engaged in an altercation with a police officer and was convicted of resisting arrest and aggravated assault.[1] He contends the evidence was insufficient to support his conviction for aggravated assault. We affirm.

Officer William Goozdich and Officer Jared Stevens testified at trial that they were responding to a report of a domestic disturbance at a house, and saw Williams leaving the enclosed front porch of the residence and Shawna Tate on the porch. N.T., 9/18/17, at 24, 26, 71. The officers were familiar with Williams and had advised him not to return to that particular address on at least ten previous occasions. Id. at 23, 70. Officer Goozdich spoke with

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] See 18 Pa.C.S.A. §§ 5104 and 2702(a)(2), respectively.

Williams on the sidewalk outside as Officer Stevens spoke with Tate on the porch. Id. at 25-26, 71. Williams told Officer Goozdich that Tate had assaulted him, but then quickly turned and entered the porch, ignoring Officer Goozdich's instruction to stop, and lunged at Tate with closed fists. Id. at 26-29, 43-44, 47, 73-76, 85. The officers grabbed Williams by both arms to prevent him from assaulting Tate. Id. at 28-29, 49, 76-77, 85-87. Williams resisted, flailing his body and thrashing his arms. Id. at 29, 53, 77, 87-88, 94. The officers pushed Williams against a wall. Id. at 53-54, 77, 87-88. Williams' elbow struck Officer Stevens in the head, and it appeared to Officer Stevens that Williams hit him intentionally. Id. at 29-30, 55, 77-78, 88, 92, 95. Officer Goozdich then put Williams into a headlock using his left arm. Id. at 30, 56, 78, 89.

At that point, Williams "shot" his head and body upward, into Officer Goozdich, and threw his right elbow into the air, toward the officer's face. Id. at 30-31, 56-58, 78. These actions thrust Officer Goozdich's head backwards and pushed his left arm into the air. Id. Officer Goozdich heard a ripping sound and lost the use of his left arm. Id. at 31, 58, 79-80. He yelled that he had torn his shoulder. Id. at 31, 79. Officer Stevens brought Williams to the ground, and Officer Goozdich held Williams down while Officer Stevens handcuffed him. Id. at 31-32, 80.

After Williams was handcuffed, Officer Goozdich walked to the sidewalk and fell to his knees in pain. Id. at 32, 81. He was transported to a hospital and diagnosed with a torn pectoral tendon in his left shoulder and damage to

his rotator cuff. Id. at 32-34, 58. Officer Goozdich underwent surgery and six weeks of intensive physical therapy. Id. at 34. At the time of trial, doctors had not released Officer Goozdich to return to work, had prescribed another six weeks of therapy, and had said that a full recovery would take nine to 12 months. Id. at 34-36. The jury convicted Williams of the above offenses and the trial court later sentenced him to an aggregate of 19 to 38 months' incarceration.

Williams filed this timely appeal, and although his Pa.R.A.P. 1925(b) statement listed additional issues, his appellate brief presents only one: "Whether the Commonwealth failed to present sufficient evidence in order to prove [Williams'] guilt beyond a reasonable doubt of aggravated assault[.]" Williams' Br. at 3. Williams argues that the evidence was insufficient to prove that he "acted with intent to cause serious bodily injury or acted knowingly or recklessly such that he should have known that his actions would cause serious bodily injury to Officer Goozdich." Id. at 8. He claims that "[a]t no point did the Commonwealth ever establish that [Williams] should have known or been nearly certain that serious bodily injury might occur." Id. at 9.

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Bradley, 69 A.3d 253, 255 (Pa.Super. 2013). We do not find the evidence

insufficient unless it is "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Id.

To prove a person guilty of aggravated assault pursuant to the subsection under which Williams was convicted, the Commonwealth must prove beyond a reasonable doubt that the defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] serious bodily injury to [a police officer] while in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(2), (c). "Serious bodily injury" is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Williams does not dispute that he caused serious bodily injury to Officer Goozdich, but maintains he did not do so intentionally, knowingly, or recklessly. When serious bodily injury is inflicted, the Commonwealth need only prove that the defendant acted recklessly. Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa.Super. 2007). "A person acts recklessly with respect to a material element of an offense when [the person] consciously disregards a substantial and unjustifiable risk that the material element exists or will result from [the person's] conduct." 18 Pa.C.S.A. § 302(b)(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to [the actor], its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Id.

- 4 -

To establish recklessness in the context of an aggravated assault charge, the defendant's conduct "must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result." Bruce, 916 A.2d at 664 (quoting Commonwealth v. Kling, 731 A.2d 145, 148 (Pa.Super. 1999)). However, the Commonwealth need not prove that the defendant reasonably anticipated the precise serious injury the victim suffered. Rather, it is sufficient that the defendant would have reasonably known that some serious injury related to the attack would occur. Bruce, 916 A.2d at 665.

The Commonwealth may prove recklessness circumstantially with evidence of the circumstances surrounding the attack. Id. at 661. Circumstantial evidence of recklessness may include evidence such as: (1) "the assailant was disproportionately larger or stronger than the victim"; (2) "the assailant had to be restrained from escalating his attack"; (3) "the assailant had a weapon or other implement to aid his attack"; or (4) "the assailant made statements before, during, or after the attack which might indicate his intent to inflict further injury." Id. at 661-62.

Here, the circumstantial evidence was sufficient to prove beyond a reasonable doubt that Williams acted recklessly when causing Officer Goozdich's serious bodily injuries. When the officers attempted to restrain Williams from attacking Tate, Williams deliberately struck Officer Stevens in the head using his elbow and launched his body toward Officer Goozdich. He attempted to strike Officer Goozdich's head with his elbow and ultimately tore

a tendon in Officer Goozdich's shoulder. Williams continued to struggle, even after Officer Goozdich made it known that his shoulder was injured, until he was on the ground in handcuffs. Williams could reasonably anticipate that some serious bodily injury would result from his actions, and nonetheless proceeded to act with conscious disregard of a substantial and unjustifiable risk that such an injury would occur. Williams' actions constituted a gross deviation from the standard of conduct that a reasonable person would have observed in his situation, and thus we find the evidence sufficient to prove recklessness and therefore aggravated assault.

We contrast this case with Commonwealth v. Magnelli, 502 A.2d 241 (Pa.Super. 1985), with which it shares some superficial similarities. In Magnelli, a man suspected of domestic violence attempted to fight police officers who then, along with the man's father, forced the man to the ground in an attempt to handcuff him. Id. at 242-43. The man's brother, who was later charged with aggravated assault, picked up one of the officers by the shirt and pants and threw him into nearby concrete steps. Id. at 243. The officer fractured his collarbone. Id. We affirmed the trial court's holding that the evidence was insufficient to establish recklessness because the defendant's action was similar to "an isolated shove, or the act of throwing someone to the ground." Id. at 242. We explained that "the connection between the officer's injuries and [defendant's] 'acts [were] so attenuated that . . . the result was in no way within the intent or contemplation of [the defendant].'" Id. at 242-43.

- 6 -

Here, in contrast, Williams' actions constituted more than an "isolated shove" and the connection between his actions and the officer's injury was not "attenuated." Rather, the evidence here demonstrates that Williams engaged in a course of conduct that, under the circumstances, he reasonably should have known was highly likely to result in serious bodily injury. See Commonwealth v. Cassidy, 668 A.2d 1143, 1147 (Pa.Super. 1995) (distinguishing Magnelli and holding facts supported finding of recklessness where defendant shoved his wife so hard that "she bounced off the doorjamb, struck another door frame, and finally fell to the ground," explaining injury was almost certain to ensue).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/8/2018