J-S24011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TYONA JOHNSON :
:
Appellant : No. 2417 EDA 2019

Appeal from the Judgment of Sentence Entered August 6, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007888-2018

BEFORE:   BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 26, 2020**

Appellant, Tyona Johnson, appeals from the judgment of sentence of 6
to 12 months' house arrest, followed by 5 years' probation, after she was
convicted, following a non-jury trial, of aggravated assault, possessing an
instrument of crime, simple assault, and recklessly endangering another
person.  We affirm.

The trial court summarized the facts and procedural history of
Appellant's case, as follows:

On August 6, 2018, at approximately 1:46 p.m.,
Complainant Denise Berry was informed that there was someone
outside her house, located at 5814 Rodman Street, in the city and
county of Philadelphia.  ([N.T.] Waiver Trial, [8/4/19, at] 9-10).
When she stepped outside, she saw Appellant…. ([*Id.* at] 10).  At
that point in time, Appellant was standing on her porch and Ms.
Berry was standing on her own porch.  *Id.*  Their porches were
separated by a black iron railing that stood about four feet tall.

---

[*] Retired Senior Judge assigned to the Superior Court.

*Id.* at 10, 12. After an exchange of heated words, Appellant swung at Ms. Berry. *Id.* at 13. Ms. Berry then went down her steps and to the pavement. *Id.* at 13. Appellant attempted to get off her porch as well, but an unidentified woman held her back. *Id.* at 11. While Ms. Berry was on the pavement, Appellant spat on Ms. Berry's face and arm. *Id.* at 14. Appellant then went into her house and came back out shortly after. *Id.* at 14, 29. Ms. Berry, who was standing on the sidewalk, in front of her door, saw Appellant step out, ran up to Appellant and hit her. *Id.* at 29. They began to fight, and it carried on for a short while about one or two houses away from their porches. *Id.* at 14-15, 30-32. They began walking back to their houses. *Id.* at 14. Appellant was walking in front of Ms. Berry and quickly hid in a bush located near her porch. *Id.* By the time Ms. Berry approached, Appellant jumped out [of] the bush and sprayed Ms. Berry in the face with mace. *Id.* at 32-33. At this point their neighbor, Ms. Newkirk, who was in her house, heard Ms. Berry scream, "I've been pepper sprayed!" *Id.* at 46. Ms. Newkirk ran outside and down the street to where Ms. Berry was standing. *Id.* Ms. Berry's eyes were extremely red. *Id.* Ms. Newkirk helped Ms. Berry up and brought her back to Ms. Berry['s] steps. *Id.* Ms. Newkirk went back to her house to get some water and towels for Ms. Berry's face. *Id.* When she came back, Appellant was throwing plants in Ms. Berry's direction. *Id.* at 46-47. Ms. Newkirk finally got to the point where she was able to get Ms. Berry in her house. *Id.* at 47. As Ms. Berry stood up from her steps, Appellant ran up behind her and grabbed Ms. Berry by the hair and [pulled her] down the flight of concrete steps. *Id.* at 37, 47. Ms. Berry fell on her knee, and the two began to struggle to get off each other. *Id.* at 38, 47. Ms. Newkirk threw herself onto them so no more harm would result. *Id.* At this point, other neighbors intervened and eventually sat Ms. Berry on the bottom of her steps. *Id.*

Ms. Berry was treated at Penn Presbyterian for a broken femur and stayed there for three days. She currently has a plate and six screws installed in her right leg. *Id.* at 18-19. Ms. Berry further testified that she could not walk on her right leg for two months. *Id.* at 21.

After the close of the waiver trial, this [c]ourt found Appellant guilty of all charges. On August 2, 2019, Appellant filed a motion for extraordinary relief[,] stating that the evidence present[ed] at trial was insufficient to sustain a conviction for a felony 1 aggravated assault charge. Appellant's Motion for Extraordinary Relief[, 8/2/19, at] 1…. Appellant argued that the

*mens rea* requirement, that Appellant acted recklessly under circumstances manifesting an extreme indifference to the value of human life[,] was not proven beyond a reasonable doubt. The motion was denied on August 6, 2019. That same day Appellant was sentenced to aggravated assault (F1), possessing instruments of crime (M1), simple assault (M2), and recklessly endangering another person (M2).

Trial Court Opinion (TCO), 1/31/20, at 1-3 (unnumbered).

On August 16, 2019, Appellant filed an "Addendum to Petitioner's Motion for Extraordinary Relief" (hereinafter "post-sentence motion"). However, before the court ruled on that post-sentence motion, Appellant filed a notice of appeal on August 21, 2019. Consequently, on September 10, 2019, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory, as Appellant's post-sentence motion was still pending. Appellant filed a timely response, and on December 4, 2019, we entered an order discharging the rule to show cause and referring the issue to the merits panel. Appellant timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court thereafter filed its Rule 1925(a) opinion.

Herein, Appellant raises two issues, which we reorder for ease of disposition:

1. Should this appeal be quashed as interlocutory because [A]ppellant's [post-sentence motion] was still pending at the time her [n]otice of [a]ppeal was filed?

2. Was not the evidence insufficient to sustain a verdict of guilt beyond a reasonable doubt for aggravated assault[,] graded as a felony of the first degree[,] inasmuch as the Commonwealth failed to establish that [A]ppellant caused serious bodily injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life, in

violation of [A]ppellant's constitutional rights under the state and federal constitutions?

Appellant's Brief at 3.

Appellant first argues that we should not quash her appeal, even though it was filed before the court issued the order denying her post-sentence motion. Appellant insists that her appeal was "perfected upon the trial court's proper consideration and denial of" that motion. *Id.* at 19. In support, she cites Pennsylvania Rule of Appellate Procedure 905(a)(5), which states: "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5). Appellant also observes that "[i]n similar scenarios, this Court has 'deem[ed] done what should have been done and [did] not quash the appeal for this reason.'" Appellant's Brief at 20 (citing, *inter alia*, **Commonwealth v. Samuel**, 102 A.3d 1001, 1004 n.2 (Pa. Super. 2014) (finding quashal unnecessary, even though a post-sentence motion was filed after the filing of a notice of appeal, because the trial court eventually entered the proper order)).

We agree with Appellant. This Court has previously relied on Rule 905(a)(5) to consider a premature appeal as being perfected after the trial court entered the order denying a post-sentence motion. **See Commonwealth v. Ratushny**, 17 A.3d 1269, 1271 n.4 (Pa. Super. 2011) (relying on Rule 905(a)(5) to conclude that the appellant's premature notice of appeal should be considered "as having been filed after the order denying

post-sentence motions"). We will do the same herein. Therefore, we will not quash Appellant's appeal.

Appellant next challenges the sufficiency of the evidence to support her conviction of aggravated assault. Initially, we note:

> When a challenge to the sufficiency of evidence is made, our task is to determine whether the evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to enable the fact finder to find every element of the crime charged beyond a reasonable doubt. ***Commonwealth v. Tapper***, … 675 A.2d 740 ([Pa. Super.] 1996).

> A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under the circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1).

> ***

> [W]here the victim suffers serious bodily injury, the Commonwealth need not prove specific intent. ***Commonwealth v. Hlatky***, … 626 A.2d 575 ([Pa. Super.] 1993)…; ***Commonwealth v. Magnelli***, … 502 A.2d 241 ([Pa. Super.] 1985). The Commonwealth need only prove [the] appellant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. ***Hlatky****,* … 626 A.2d at 581. "[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 ([Pa.] 1995)….

***Commonwealth v. Nichols***, 692 A.2d 181, 184-85 (Pa. Super. 1997).

- 5 -

In this case, Appellant claims that the Commonwealth failed to establish that she acted with malice and, instead, demonstrated only that she acted "negligently or with ordinary recklessness in causing Ms. Berry to suffer serious bodily injury…." Appellant's Brief at 10. Appellant stresses that recklessness for purposes of demonstrating aggravated assault "must be 'such that life threatening injury is essentially certain to occur.'" *Id.* at 12 (quoting *O'Hanlon*, 653 A.2d at 618). Appellant compares her case to the facts of *Magnelli*, where the defendant "grabbed [a] police officer by his shirt and pants, picked him up, and threw him forward and into nearby concrete steps." *Magnelli*, 502 A.2d at 243. We concluded "that the evidence was insufficient to establish that [Magnelli] acted recklessly under circumstances manifesting an extreme indifference to the value of human life." *Id.* Appellant insists that, "[a]s in *Magnelli*, the connection between [her] actions and the resulting injury were so attenuated that the result was 'in no way within the intent or contemplation of [Appellant].'" *Id.* at 15-16 (quoting *Magnelli*, 502 A.2d at 242). She also argues that "[t]his case involves a common street fight between two willing participants[,]" pointing out that Ms. Berry was hitting her during the altercation, as well. *Id.* at 16. In sum, Appellant contends that the Commonwealth's evidence did not establish that she intended to cause serious bodily injury or death to Ms. Berry, "or that she had any reason to believe that a life-threatening injury was essentially certain to occur as a result of her conduct.'" *Id.* at 17 (internal quotation marks omitted).

Appellant's argument is unconvincing. Initially, as the trial court observes, there was no mutual combat at the point when Appellant pulled Ms. Berry down the steps. *See* TCO at 6 (unnumbered). Instead, at that time, Ms. Berry was attempting to clean the mace off her face that Appellant had sprayed, and was not "intentionally interacting with Appellant" at all. *Id.* (unnumbered). Moreover, Appellant's actions were more certain to cause injury than those in *Magnelli*. While the officer in *Magnelli* was thrown forward into steps, here, Appellant grabbed Ms. Berry's head from behind, and pulled her *backwards and down* concrete steps. We conclude that Appellant "could have reasonably anticipate[d] that serious bodily injury or death would be the likely and logical consequence of [her] actions…." *O'Hanlon*, 653 A.2d at 618. Accordingly, the Commonwealth presented sufficient evidence to support Appellant's aggravated assault conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/20